UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ASHLEY BROCKMAN,**

    **Plaintiff,**

v.                                                                                       **Case No.: 3:06-cv-923 -J-16JRK**

**AVAYA, INC.,**

    **Defendant.**
_____/

## ORDER

Defendant, Avaya Inc.'s ("Avaya") moves for summary judgment (the "Motion"). (Dkt. 15). Plaintiff, Ashley Brockman responds in opposition (the "Response") (Dkt. 25) and Avaya replies (the "Reply"). (Dkt. 30).

In support of its Motion for summary judgment, Avaya argues Plaintiff cannot establish a *prima facia* case of discrimination either under the Pregnancy Discrimination Act (the "PDA"), 42 U.S.C § 2000e(k) or under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Further, Avaya argues that Plaintiff cannot demonstrate that Avaya's stated reasons for her termination are pretextual. For the reasons that follow, the Motion (Dkt. 15) will be **DENIED**.

**I.**     **Procedural and Factual History**

Avaya is a computer consulting company that sells its consulting services to businesses throughout the United States. Plaintiff began working at Avaya on October 2, 2003, when it acquired Plaintiff's then employer, VISTA Information Technologies, Inc.

("VISTA"). VISTA employed Plaintiff as a commissioned salesperson whose primary duty was to sell software and the implementation and customization services for that software. On November 1, 2004, Plaintiff accepted a non-commissioned managerial position as a "Business Development Manager" or "Services Partner Manager" in Avaya's new Global Managed Services division.

As a manager, Plaintiff worked with Avaya's direct sales representatives and "channel partners" to sell and promote Avaya's services and technology. Plaintiff was also required to assist the sales representatives and "channel partners" to "close deals" by training salespeople, providing pricing information, making presentations, and participating in negotiations.

Plaintiff's claim originated after Avaya terminated her on November 15, 2005. Prior to her termination, Plaintiff became pregnant. She told her immediate supervisor, Mr. Scott Schell ("Schell"), that she was pregnant on October 5, 2005.[1]  Plaintiff claims that she was terminated because of her pregnancy.  In response, Avaya claims that Plaintiff was terminated as a result of Plaintiff's lackluster performance.  Avaya claims the initial decision to fire Plaintiff was made on September 20, 2005, three days before Plaintiff learned that she was pregnant.  Plaintiff sued pursuant to Title VII and the PDA.

The PDA amended Title VII in 1978 by the PDA to equate discrimination "because of sex" or "on the basis of sex" with discrimination on the basis of pregnancy, childbirth or

---

[1] In July 2005, Schell became Brockman's supervisor, replacing Mr. Nick Holden ("Holden").

related medical conditions. Under Title VIII, women affected by such conditions must be treated the same for all employment related purposes as other persons who are not affected, but who have a similar ability or inability to work.

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). The Court must view the evidence and inferences drawn from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988); WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988). The Eleventh Circuit explained in Lee that:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference can be reasonably drawn, it is for the trier of fact to determine the proper one.

Id.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts and if any inference introduces a genuine issue of material fact, then

the court should not grant the summary judgment motion. See Augusta Iron & Steel Works, Inc., 835 F.2d at 856.

In ruling on a motion for summary judgment, it is well-established that the court may neither adjudge the credibility of the witnesses nor weigh the evidence. See Pita v. State Street Bank and Trust Co., 666 So.2d 268, 268 (Fla. 3d Dist. Ct. App. 1996) (holding that "[o]n a motion for summary judgment, it is settled that a trial court is not permitted to weigh material conflicting evidence or pass upon the credibility of the witnesses." ); Juno Indus., Inc. v. Heery Int'l, 646 So.2d 818, 822 (Fla. 5th Dist. Ct. App. 1994) (stating that "[t]he trial court may not determine factual issues nor consider either the weight of the conflicting evidence or the credibility of witnesses in determining whether a genuine issue of material fact exists in a summary judgment proceeding." ); Shapiro v. Barron, 538 So.2d 1319, 1320 (Fla. 4th Dist. Ct. App. 1989)(reasoning that "[j]udging the credibility of witnesses or weighing the evidence are not proper subjects of a motion for summary judgment."); Kuczkir v. Martell, 480 So.2d 700, 701 (Fla. 4th Dist. Ct. App. 1985) (stating that "[w]here the issue of credibility is present, summary judgment is inappropriate."); State Farm Mut. Auto. Ins. Co. v. Gant, 460 So.2d 912, 913 (Fla. 2d Dist. Ct. App. 1984) (holding that "[i]t goes without saying that a trial judge may not, on motion for summary judgment, make evidentiary determinations involving the credibility of witnesses."); Strickland v. Strickland, 456 So.2d 583, 584 (Fla. 2d Dist. Ct. App. 1984) (reasoning that "[a] trial judge may not, on a motion for summary judgment, make determinations involving the weight of the evidence or the credibility of witnesses." ).

To establish a *prima facia* case of discrimination under the PDA and Title VII, a plaintiff must meet the McDonnell Douglas test. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under that test, a plaintiff must establish that (1) she is a member of a group protected by Title VII, (2) she is entitled to or qualified for her position, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who are not members of her protected class. Hanley v. Sports Authority, 143 F.Supp.2d 1351, 1355-6 (internal citations omitted).

Once established a *prima facia* case of discrimination creates a rebuttable presumption of discrimination in favor of the plaintiff. The defendant destroys that presumption by offering a non-pretextual and nondiscriminatory explanation for its decision. The burden then returns to the plaintiff to show that the employer's explanations are merely pretextual. McDonnell Douglas, 411 Us. At 804.

The plaintiff need not produce evidence of specific acts or statements showing discriminatory intent on the part of the employer. See Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (1997). "A plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law by putting on a *prima facia* case and by producing evidence sufficient to discredit in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions." Id. "[O]nce the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reasons for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's

5

*prima facia* case taken together with the employer's explanations for its action. At that point, judgment as a matter of law is unavailable." Id.

## III.   Discussion

Avaya attacks the sufficiency of the evidence presented by Plaintiff under the second and fourth prongs of the McDonnell Douglas test - an employees' qualification for her position and differential treatment of the employee by the employer.

### A.   Plaintiff's *Prima Facia* Case

### 1.   The Second Prong

As a threshold matter, the parties disagree about the application of the second prong of the McDonnell Douglas.[2] A plaintiff must demonstrate that she is entitled to or qualified for her job. In employment discrimination cases, an employee is considered qualified for a position if she meets the criteria that an employer articulated for the position. See Barrett v. Capital Acquisitions and Management Co., 2005 WL 5435098 (S.D. Fla. Jan. 26, 2005) (citing to Wright v. Southland Corp., 187 F.3d 1287, 1300, n.16 (11th Cir. 1999)). For the purposes of a *prima facia* case, a court should consider only employee qualifications that may be measured objectively. See Legrand v. Trustees of Univ. of Ark. at Pine Bluff, 821 F.2d 478, 481 (8th Cir. 1987). To demonstrate that she was qualified, Plaintiff is required

---

[2] Plaintiff claims that "where a plaintiff is discharged from a previously held position, in analyzing whether a *prima facia* case has been made, 'the prong requiring proof of qualification is removed . . . .'" (Dkt. 25 at p. 2, citing to Pace v. Southern Railway System, 701 F.2d 1383, 1386 n.7 (11th Cir. 1983)). Avaya claims that proof of qualification is still necessary but "evidence sufficient to satisfy this element may be *inferred* 'where a plaintiff has held a position for a significant period of time'" but that Plaintiff's short tenure does not entitle her to any such inference. (Dkt. 30 at p. 3, citing Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999). Avaya is correct about the law, but not necessarily correct as to its application here.

to provide evidence that "she was meeting [her employer]'s legitimate performance expectations at the time of her discharge." Ferrell v. Masland Carpets, Inc., 97 F.Supp.2d 1114, 1124 (S.D. Ala. 2000).

The first question is whether Plaintiff's tenure entitles her to the inference that she was qualified for her management position. Avaya claims that "Brockman started in her position of Business Development Manager on November 1, 2004, and the decision to terminate her was made approximately 10½ months later at the calibration session held September 20, 2005. Brockman's short tenure in this position does not entitle her to an inference of qualification." (Dkt. 30 at p. 4).[3] However, Plaintiff worked in the computer industry prior to joining Avaya. Based on Plaintiff's experience both before and at Avaya, the Court cannot conclude that Plaintiff is not entitled to an inference of qualification.[4]

Apart from any inference Avaya claims that because of her slipping performance ratings, Plaintiff cannot prove she was "qualified" for her position. Avaya's argument relies on its Performance Management Platform ("PMP") used to assess its employees' performance.[5] The PMP measures employee performance by assigning each employee an

---

[3] Avaya cites to Aldabblan v. Festive Pizza, Ltd., 380 F.Supp.2d 1345, 1352 (S.D. Fla. 2005) for the proposition that an employee's seven (7) month tenure did not entitle him to an inference of qualification.

[4] She also worked for Avaya in a commissioned sales capacity for over a year before accepting her final position with Avaya as a "Business Development Manager." In addition, it is not at all clear from the record evidence presented to date that the decision to fire Plaintiff was made on September 20, 2005, rather than after Schell learned of her pregnancy on October 5, 2005. In any case, Plaintiff was employed as a Business Development Manager for over one (1) year. At least, Plaintiff worked for Avaya for one (1) year. At most, she worked for Avaya for two (2) years and in the same industry for even longer than that.

[5] See Dkt. 15 at p. 6 for a full explanation of the PMP's rating scale.

"Individual Performance Factor" ("IPF") number. According to Avaya, Plaintiff's IPFs had been declining - beginning with a 98 (Effective), slipping to an 87 (Effective), and falling just before her termination, to 65 (Needs Improvement). Avaya further claims that the undisputed facts demonstrate that Plaintiff's performance rating had been declining for six months, and that, despite "constant coaching" from Schell, Plaintiff was the lowest performer in her group. (Dkt. 15 at p.16).

The record fails to support Avaya's arguments. No written documentation supports Schell's claim that the decision to fire Plaintiff was made on September 20, 2005. Schell's contemporaneous notes from the September 20, 2005, conference call contain no references to Plaintiff's termination. Schell claims to have written and then lost an official document outlining his reasons for terminating Plaintiff. In addition, even after September 20, 2005, Schell expected Plaintiff to travel to Las Vegas for Avaya's October 5, 2005, national sales convention, despite the company's cost concerns.

Further, in direct violation of a written company policy, Schell failed to document any "coaching session" he allegedly provided to Plaintiff when he became her supervisor. Schell maintains no notes describing an objective process by which he assigns the IPF ratings. Finally, it is undisputed that Plaintiff's personnel file, which should have been in Schell's possession, is missing. Avaya has failed to advance any compelling reasons for these documentation and retention failures.

Plaintiff has meet her burden for the second prong of the McDonnell Douglas test by demonstrating other objective evidence of her qualification. In addition, Plaintiff has raised

colorable arguments that her exact job requirements were in flux and that she never received the "constant counseling" Schell claims he provided to Plaintiff in an effort to improve her performance.

Prior to receiving her final IPF of 65 ("Needs Improvement"), Plaintiff had received an IPF of 87, meaning she was "Effective." The IPF of 87 is the last, undisputed[6] IPF ranking Plaintiff received. Although Plaintiff's IPF rating dropped from 98 to 87, according to Avaya's performance scale an 87 indicates that Plaintiff was an "effective" employee.[7]

Plaintiff provides ample documentation that she was an "effective performer," measured by business opportunities on the horizon (referred to as "funnel opportunities" by the parties) and closed sales. According to the November 5, 2005, funnel report, Plaintiff had eighteen funnel opportunities - the most of anyone on her team. In addition, Plaintiff had recently won a sales award and closed three (3) deals.

Based on the foregoing, Avaya has failed to demonstrate that it is entitled to summary judgment on this point.

### 2.    The Fourth Prong

---

[6] As discussed above, Schell is unable to provide the Court with any documentation that details how he determined that Plaintiff's final IPF should be 65. Plaintiff was given her final IPF ranking of 65 on the same day she informed Schell that she was pregnant and would not be able to attend Ayaya's national sales convention in Las Vegas. Upon receipt of her IPF of 65, Plaintiff asked to see the criteria Schell used to reach this number. Although Schell informed Plaintiff that he had completed a performance evaluation and would send it to her; no such evaluation was provided to Plaintiff. In addition, Schell cannot produce any performance evaluations and documentation for any of the other employees' on Plaintiff's team when she was terminated. Without such documentation, the Court cannot state with any confidence that Plaintiff's final IPF was based on objective performance criteria.

[7] In a footnote, Avaya attempts to qualify Plaintiff's "effective" status by claiming, "[a]n IPF . . . of 87 is only three points above the 'Needs Improvement' category and is not considered satisfactory job performance, but to the contrary, represents performance that is only 'barely acceptable.'" (Dkt. 30 at p. 4, n.5).

Avaya claims that Plaintiff cannot prove the fourth prong of her *prima facia* case, that she was treated less favorably. Specifically, Avaya claims that Plaintiff cannot prove that she suffered from differential application of work or disciplinary rules because "her position was offered to another pregnant woman and her duties were ultimately assumed by Sonia Minor, another female employee within Brockman's own protected class." (Dkt. 15 at p. 17).

Differential treatment may be established by showing that a similarly situated employee that was not in a protected class was treated more favorably. Ferrell, 97 F.Supp. 2d at 1124. Under the McDonnell Douglas test, a plaintiff is required to "establish a *prima facia* case [that] includes identifying an individual who replaced [her] was treated better than [she] who was not a member of [her] protected class." Morris v. Emory Clinic, Inc., 402 F.23d 1076, 1082 (11th Cir. 2005).

Plaintiff was ultimately replaced by a non-pregnant female Business Development Manager from the Central region of the United States, Ms. Sonia Minor. Avaya claims that Schell first offered Plaintiff's job to another pregnant Business Development Manager from the Southeastern region of the United States, Ms. Tracy Sklandanowski, but that she declined the job due to the travel required. Avaya claims that an e-mail from Schell to Ms. Sklandanowski dated December 22, 2005, is evidence of this job offer and that Ms. Sklandanowski was in fact pregnant at the time. Plaintiff calls into question Ms. Sklandanowsk's pregnancy and notes that upon her termination in November, Plaintiff was instructed to immediately turn all her projects over to Ms. Minor.

Avaya claims that Plaintiff's job was given to a member of her protected class - another woman. Avaya's argument is, as Plaintiff stated, specious. Pursuant to the PDA, the issue here is pregnancy, not gender. Plaintiff was not replaced by another pregnant woman, she was replaced by a non-pregnant woman, who according to Plaintiff was treated better than Plaintiff. Avaya fails to demonstrate that Plaintiff cannot prove her *prima facia* case. Hence, Avaya fails to meet the summary judgment standard.

### B.    Substantial Evidence of Pretext

Avaya has articulated several reasons for Plaintiff's termination. Plaintiff now must demonstrate that Avaya's proffered reasons are mere pretext for discrimination. In the Eleventh Circuit, a plaintiff must "meet [these proffered reasons] head on and rebut [them], and the employee cannot succeed by simply quarreling with the wisdom of that reason." Aldabblan v. Festive Pizza, Ltd., 380 F.Supp.2d 1345, 1353 (S.D. Fla. 2005) (internal citations omitted). Avaya's stated reasons for terminating Plaintiff are discussed in section A above. The evidence used by Plaintiff to prove she was qualified for her job, is the same evidence required to prove pretext.

The Court has already determined that Plaintiff met the burden of proving her *prima facia* case. However, just because a plaintiff has met its *prima facia* burden, does not "in and of itself foreclose the possibility of summary judgment being granted in favor of the employer." Young v. General Foods Corp., 840 F.2d 825, 828 (11 th Cir. 1988). If an employer offers non-discriminatory reasons for termination, the plaintiff must demonstrate pretext. A plaintiff may demonstrate pretext either "directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Review of the evidence reveals that Plaintiff has both directly attacked Avaya's proffered reasons and called into question the credibility of its one of its key witnesses, Schell. Especially when coupled with Avaya's documentation failures and its inability to locate Plaintiff's personnel file, Plaintiff provides sufficient evidence to allow a jury to make the final determination about whether Avaya's proffered reasons are in fact pretext for discrimination.

Finally, the Court notes that witness credibility is critical in this case. Is Schell believable? Is Plaintiff? Avaya has chosen to hinge its defense in large part on its claim that the decision to terminate Plaintiff was made on September 20, 2005, three days before Plaintiff found out that she was pregnant. If the finder of fact believes this, Avaya will prevail; however, if the finder of fact does not believe that the termination decision was made on this date, Plaintiff may prevail. Credibility determinations cannot be made by simply reading a dispositive motion. Such determinations are the provenance of the jury and will be made after the witness presentations at trial. Plaintiff has done more than simply make conclusory self-serving statements in support of her own perspective about the events leading to her termination. The conflicting stories of Plaintiff and Avaya coupled with Avaya's failure to provide contemporaneous support documents for its position and its loss of critical personnel files are sufficient to raise substantial credibility issues with respect to Avaya's

account of the relevant events. See Denardo v. Clarence House Imports, Ltd., 870 F.Supp.227, 233 (1994).

**IV. Conclusion**

For the reasons set forth above, the Motion (Dkt. 15) is **DENIED**.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida on this 28th day of February 2008.

JOHN H. MOORE II
United States District Judge


Copies to: Counsel of Record